# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GEORGE RUFF, a citizen of the State of Hawaii, DENNIS CALLAGHAN, a citizen of the State of Maryland, SCOTT L. LAGER, a citizen of the State of New York and MITCHELL HOCHBERG, a citizen of the State of New York. )
)
)
)
)
)
)

        Plaintiffs, )
)
    vs. )
)
PARTNERS LIQUIDATING TRUST, a Delaware trust, WILMINGTON TRUST COMPANY, a Delaware corporation, as trustee, BANYAN MORTGAGE INVESTMENT FUND, INC., an Illinois corporation, as trustee, VMS MORTGAGE COMPANY III, an Illinois general partnership, VMS MORTGAGE COMPANY II, an Illinois general partnership and VMS MORTGAGE COMPANY, an Illinois general partnership. )
)
)
)
)
)
)
)
)
)
)
)
)
    Defendants. )
)

**00C 7337**

Case No. _____

JUDGE LEINENWEBER

MAGISTRATE JUDGE LEVIN

DOCKETED
NOV 21 2000

## COMPLAINT AND JURY DEMAND

Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg, by and through their attorneys, Sopuch Nouhan Higgins & Arnett, L.L.P., submit the following as their complaint against Defendants Partners Liquidating Trust, a Delaware trust, Wilmington Trust Company, as trustee, Banyan Mortgage Investment Fund, Inc., as trustee, VMS Mortgage Company III, an Illinois general partnership, VMS Mortgage Company II, an Illinois General Partnership and VMS Mortgage Company, an Illinois general partnership.

## I.

## **PARTIES AND JURISDICTION**

1.  Plaintiff George Ruff ("Ruff") is a citizen residing in the State of Hawaii.

2.  Plaintiff Dennis Callaghan ("Callaghan") is a citizen residing in the State of Maryland.

3.  Plaintiff Scott L. Lager ("Lager") is a citizen residing in the State of New York.

4.  Plaintiff Mitchell Hochberg ("Hochberg") is a citizen residing in the State of New York.

5.  Defendant Wilmington Trust Company is a Delaware corporation with its principal place of business in Wilmington, Delaware. Wilmington Trust Company is named a defendant solely in its capacity as trustee of Partners Liquidating Trust.

6.  Defendant Banyan Mortgage Investment Fund, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois. Banyan Mortgage Investment Fund is named a defendant solely in its capacity as trustee of Partners Liquidating Trust.

7.  Defendant Partners Liquidating Trust (the "Trust") is a Delaware trust with its principal place of business in either Chicago, Illinois or Wilmington, Delaware.

8.  Defendant VMS Mortgage Company III ("VMS III") is an Illinois general partnership whose partners currently are VMS Mortgage Company ("VMS I"), VMS Mortgage Company II ("VMS II") and Wrap Loan Corp. Wrap Loan Corp. is an Illinois corporation with its principal place of business in Chicago, Illinois.

9.  Defendant VMS Mortgage Company II ("VMS II") is an Illinois general partnership whose partners are, upon information and belief, at all times relevant to this complaint, Robert D.

Van Kampen, Peter R. Morris and Joel A. Stone. Van Kampen, who is deceased, resided in either the State of Michigan or Illinois; Morris and Stone are citizens who reside in the State of Illinois.

10.     Defendant VMS Mortgage Company ("VMS I") is an Illinois general partnership whose partners are, upon information and belief, at all times relevant to this complaint, Robert D. Van Kampen, Peter R. Morris and Joel A. Stone.

11.     This is an action for declaratory relief as to the extent and nature of plaintiffs' liability under four separate promissory notes dated December 31, 1984, payable to VMS III in the face amount of $1,180,000 (the "Note" or "Notes") that Ruff, Callaghan, Lager and Hochberg executed while employed at VMS Realty Partners. In this action, Plaintiffs seek declaratory judgments as follows:

(a)     Under the terms of the Notes, VMS III's *in rem* recourse to the assets of the maker (in this case, the assets of Ruff, Callaghan, Lager and/or Hochberg) was "partial" and limited to the 5% interest that each Plaintiff had in VMS III and to the rights that each Plaintiff had under the Amended and Restated Partnership Agreement of VMS III;

(b)     Ruff's and Callaghan's liability under the Notes, in any event, was released by Termination of Employment Agreements ("Termination Agreement" or "Termination Agreements") signed by their employer, VMS Realty Partners;

(c)     Ruff's, Callaghan's, Lager's and Hochberg's liability under the Notes was, in any event, released by a Mutual Release and Creditor Repayment Agreement signed by the beneficiaries of the Trust, the purported current holder of the Notes; and

(d)     The Trust is, in fact, not the holder of the Notes because VMS III never effectively assigned them.

12.     Jurisdiction is premised upon 28 U.S.C. § 1332 (a). Plaintiffs are citizens of the States of Hawaii, Maryland and New York and Defendants are citizens of the States of Illinois, Delaware and Michigan. The amount in controversy, which amount has allegedly become due under the terms of the Notes, is approximately $2,900,000.00. Venue is proper pursuant to 28 U.S.C. § 1391(a) as most of the Defendants are located in the Northern District of Illinois and a substantial portion of the actions which are the subject of this complaint occurred in this district.

## II.

## FACTS APPLICABLE TO ALL COUNTS

### A.     Statutory Background.

13.     During the 1980's, several related entities, referenced here as the VMS Principal Partners and the VMS Entities, were engaged in the business of sponsoring real estate syndications throughout the United States. Upon information and belief, these entities were substantially owned by Van Kampen, Morris and Stone. Typically, a VMS-sponsored syndication would acquire investment property utilizing "wrap" financing. Investors in these syndications often were able to deduct accrued but unpaid interest from income reported on their federal income tax returns and thereby enjoyed, through their participation, tax advantages in addition to potential asset appreciation.

14.     VMS I and VMS II were two entities which held wrap notes and wrap mortgages of five such syndications. These wrap notes and wrap mortgages, referenced herein as the "Project Notes" and the "Project Mortgages," related to the following properties:

    a.    Lake Magdalene Arms Apartments
    b.    Davies Pacific Center Office Building
    c.    Shoreham Hotel
    d.    Tower Place Office Building
    e.    Fort Lauderdale Office Park

15.     In 1984, Congress passed the Deficit Reduction Act of 1984, which eliminated the ability of taxpayers to deduct unpaid interest which accrued between related entities, until such interest was actually paid. *See* P.L. 98-369, sec. 174, codified at 26 U.S.C. § 267(a)-(c), (e)-(f) ("the Act"). Upon information and belief, the Act would have eliminated the ability of investors in the VMS syndications whose Project Notes and Project Mortgages were held by the VMS I and VMS II to deduct accrued but unpaid interest from their taxable income.

16.     In response to the Act, and in order to partially liquify the Project Notes and Project Mortgages, VMS I and VMS II set out in the latter part of 1984 to create VMS III, to hold the Project Notes and Project Mortgages and thereby preserve the deductibility of accrued but unpaid interest by investors in these VMS-sponsored syndications.

## B.     <u>VMS III - The First Partnership.</u>

17.     On December 21, 1984, VMS I and VMS II created VMS III pursuant to a Partnership Agreement attached and incorporated as a part of this complaint as Exhibit 1. Pursuant to Exhibit 1, VMS I and VMS II contributed the five Project Notes and Project Mortgages, in exchange for their respective 31.6% and 68.4% interests in VMS III.

18.     The Project Notes and Project Mortgages (which had an aggregate face value exceeding $209,000,000), upon information and belief, were then used as collateral for a $20,000,000 loan from ContiTrade Services Corp. (eventually, one of the beneficiaries of the Trust). The proceeds of the loan were distributed to VMS I and VMS II. Upon information and belief, VMS III executed a promissory note to Conti Trade Services Corp. for the amount of the loan, which upon information and belief, represented VMS III's sole liability to outside creditors.

## C.   VMS III - The Second Partnership.

19.   On or about December 31, 1984, ten individuals (nine of whom were employees of VMS-related entities, including Ruff, Callaghan, Lager and Hochberg) were requested to acquire a 50% interest in VMS III. At the request of their employer, Ruff, Callaghan, Lager and Hochberg, along with six other individuals, became partners of VMS III pursuant to an Amended and Restated Partnership Agreement attached and incorporated as a part of this complaint as Exhibit "2". Based upon the importance of the creation of a new entity to VMS's continued operation, and their positions, Plaintiffs believed and understood from conversations with the principals of VMS I that their participation in VMS III was a condition to their continued employment with VMS Realty Partners.

20.   Pursuant to the Amended and Restated Partnership Agreement, each Plaintiff contributed $20,000 of his personal funds and executed a partial recourse promissory note (the "Note" or "Notes") in the amount of $1,180,000 (a copy of the Note executed by Scott Lager is attached and incorporated as Exhibit "3"). In exchange, each Plaintiff received a 5% interest in VMS III. In total, the ten individuals received a 50% interest in VMS III.

21.   The participation of Plaintiffs and the other individuals in VMS III was sought solely to create an entity which would hold the Project Notes and Project Mortgages, allow for the continued deduction of accrued but unpaid interest by investors in VMS-sponsored syndications after the effective date of the Act, and thus allow the VMS entities to remain in business. The investment was not for the purpose of raising capital. As such, Plaintiffs' participation in VMS III was more an obligatory duty of his employment, rather than a voluntary investment.[1]

---

[1]VMS Realty Partners subsequently required plaintiffs to invest in other projects, such as the Toronto Park Hotel, to retain their employment positions with VMS Realty Partners.

22.     Before and after the signing of the Amended and Restated Partnership Agreement and execution of the Notes, Plaintiffs were explicitly told by VMS I including Peter Morris, Robert Van Kampen and Joel Stone that the terms of the Notes limited each Plaintiffs' liability to his $20,000 cash investment, his partnership interest in VMS III, and his rights under the Amended and Restated Partnership Agreement.

23.     In reliance on the foregoing statements and consistent with the duties of their employment, Plaintiffs signed the Amended and Restated Partnership Agreement and the Notes and became a 5% partner in VMS III.

24.     At the same time, Plaintiffs signed a Security Agreement.  A copy of the Security Agreement executed by Lager is attached and incorporated as a part of this complaint as Exhibit "4."

25.     Plaintiffs' liability as partners of VMS III was limited and specific.  The Amended and Restated Partnership Agreement provided that even though each Individual Partner was a general partner, he had no liability on VMS III's debt to ContiTrade Services Corporation.  The provision stated:

> The Partners agree that none of the Individual Partners shall have any personal liability whatsoever for the obligations of the Partnership under a certain promissory note and loan agreement, in the original principal amount of $20,000,000, as the same may be amended from time to time, entered into between the Partnership and ContiTrade Services Corporation prior to the date hereof, or any replacement or refinancing of such loan.

*See* Exhibit 2, ¶ 6(b).

26.     Similarly, each Plaintiff's liability as Maker of the Note was limited to his cash investment, partnership interest and rights under the Amended and Restated Partnership Agreement. Indeed, the Notes were expressly nonrecourse, with a single exception:  VMS III, as payee, had

"partial recourse" "at all times" to the "assets of the Maker" to the maximum extent of ten percent of the outstanding amount of principal and interest.[2]

27.     Use of the word "partial." The Notes provided, "Payee [VMS III] shall have *partial* recourse at all times to the assets of Maker, . . . ." The provision was worded to allow *in rem* recourse to the assets of the Makers, as opposed to creating a personal liability of the Makers. The term "partial" was further used to show clearly that the "assets of Maker(s)" subject to the debt were limited -- as will be shown, to Plaintiffs' assets in the partnership. Why else use the word "partial"? If the Notes meant that the Maker's unrelated personal assets were subject to the payment of the debt, it would have omitted the word "partial" and instead said "Payee shall have *full* recourse at all times to the assets of the Maker. . . ."

---

[2]Specifically, paragraphs 2 and 3 of the Note provided:

> Prior to the Maturity Date (as defined below), Maker shall be required to make payments of principal and interest only to the extent of "Cash Flow," which for purposes of this Note shall mean all distributions to Maker from Payee in respect to Maker's general partnership interest in Payee, including distributions of cash flow and net proceeds from the sale, refinancing or other disposition of Payee's assets. Payments are required to be made hereunder within seven days after the receipt of Maker of Cash Flow. Notwithstanding the foregoing, all outstanding principal and accrued and unpaid interest shall be due and payable in full on December 31, 1994 ("Maturity Date"). Payee agrees that if Cash Flow during the term of this Note is not sufficient to enable Maker to pay in full the outstanding principal balance and all accrued and unpaid interest of this Note by December 31, 1994, Payee shall extend the Maturity Date to December 31, 1999.

> Payee shall have partial recourse at all times to the assets of Maker, to the maximum extent of ten percent of the outstanding balance of principal and accrued and unpaid interest; *otherwise this Note shall be non-recourse.* Maker's obligations under this Note shall be further secured by a security agreement between Maker and Payee, of even date herewith (emphasis supplied).

28.    Use of phrase "at all times." The Notes referenced that the limited recourse granted could be made "at all times." The second paragraph of the Notes made clear that the only assets to which partial recourse was given "at all times" were the interest of each Plaintiff in VMS III and the rights of each Plaintiff under the Amended and Restated Partnership Agreement. Specifically, this paragraph subjected "Cash Flow" realized as a result of each Plaintiffs' "interest in Payee [VMS III]" to the Note obligation even prior to maturity. No other provision granted recourse to unrelated assets of the Maker prior to the maturity date. In other words, Plaintiffs did not otherwise have to use personal funds to reduce the principal or to pay interest on the Notes before or after the maturity date.

29.    Security Agreement. The Note stated that the obligation was further secured by a Security Agreement, which clearly granted a security interest in the partnership interest of each Plaintiff in VMS III and rights of each Plaintiff under the Amended and Restated Partnership Agreement. *See* Exhibit 4. It is highly unusual for a creditor to extend credit for a term of ten to fifteen years, without requiring interest payments, secured by certain identified assets, and not to secure the obligation with the borrower's other personal assets if, in fact, it was the creditor's intent to subject such assets to satisfaction of the indebtedness.

**D.    The After-The-Fact Redemption.**

30.    On or about September 25, 1985 (nine months after the individuals became partners in VMS III), VMS I and VMS II signed an "Agreement," attached and incorporated as a part of this complaint as Exhibit "5". The "Agreement" recited that in order to admit the individual partners to VMS III, VMS III desired to redeem 50% of the partnership interests of each of VMS I and VMS II, respectively. In consideration of such redemption, VMS III would distribute the individuals' cash contributions and assign the notes and security agreements to VMS I and VMS II, on specified

terms. The "Agreement" referenced the "extreme time pressures" involved in completing the amendment to the VMS III Partnership Agreement and the admission of the individual partners on December 31, 1984, and the inadvertent failure to document an agreement to distribute the cash, notes and security agreements to VMS I and VMS II. The "Agreement" proceeded to provide that the partnership (purportedly, VMS III), "hereby redeems" 50% of the partnership interests of VMS I and VMS II, and provided that "upon receipt" of *all* the cash, notes and security agreements from *all* of the individual partners, VMS III *will* distribute the cash, notes and security agreements to VMS I and VMS II in accordance with their original ownership shares.

31. The September 25, 1985 Agreement was not signed by the individual partners, who collectively owned 50% interest in VMS III, despite the section of the Amended and Restated Partnership Agreement which provided that management decisions were to be made by partners holding at least 51% of the interests in VMS III. The individual partners including Ruff, Callaghan, Lager and Hochberg did not consent to and were not aware of the distribution of the individual partners' Notes and initial cash contributions. The Agreement and the acts of VMS I and VMS II reflected that VMS I and VMS II did not really consider the individuals to be partners, with liability for management decisions.

### E. VMS III - The Third Partnership.

32. On or about July 30, 1987, the individual partners of VMS III, including Ruff, Callaghan, Lager and Hochberg subscribed to become shareholders of Wrap Loan Corporation, which corporation was to hold their partnership interests in VMS III. Wrap Loan Corporation was formed to address "phantom income" which the individual partners of VMS III realized in calendar years 1985, 1986 and for the first eight months of 1987 on the Project Notes. The restructuring reflected the parties' intent that the individual partners were not intended to incur a personal liability,

such as payment of taxes out of their personal funds, as a result of their investment and partnership interest in VMS III

33.    On July 31, 1987, all the partners of VMS III consented to the assignment of the individual partners' interests to Wrap Loan Corporation and to the admission of Wrap Loan Corp. as a 50% partner of VMS III. A copy of the partners' written consent is attached and incorporated as a part of this complaint as Exhibit "6".

34.    Plaintiffs received no distributions from VMS III during the ten year period between December 31, 1984 and December 31, 1994. Upon information and belief, during the same period, the Wrap Notes and Wrap Mortgages which were held by VMS III became worthless.

**F.    The Termination of Employment Agreements.**

35.    On March 31, 1987, VMS Realty Partners and Ruff entered into a Termination of Employment Agreement ("Termination Agreement"), a copy of which is attached and incorporated herein as Exhibit "7." The Termination Agreement was drafted by VMS Realty Partners. Under the Termination Agreement, VMS Realty Partners terminated Ruff's employment and partnership relationships with VMS and its affiliates under certain terms and conditions. Four paragraphs of the Termination Agreement are particularly relevant:

> 1.    <u>Compensation</u>: Concurrently with the execution of this Agreement, VMS shall pay the Employee $460,000 and give the Employee a portion of VMS' Residual Interest and Assignment Note Proceeds in certain transactions as hereinafter set forth as payment in full of all sums due the Employee for any and all services performed by the Employee during the term of his employment with VMS. Inconsideration, therefore, each party waives and releases each other from any and all claims or demands of any nature whatsoever with VMS other than unpaid post January 1, 1985 Assignment Note Proceeds.

5. <u>Binding Effect</u>: This Agreement shall be binding upon and inure to the benefit of the parties thereto, their heirs, legal representative, successors and assigns. The parties hereto agree to execute any and all documents necessary or appropriate to effectuate the purposes of this Agreement, but the failure to execute any such document shall not affect the rights and obligations of the parties as provided in this Agreement.

6. <u>Entire Agreement</u>: This Agreement contains the entire agreement of the parties and supersedes all prior understanding and agreements between the parties including but not limited to any and all partnership agreements in which VMS or a VMS affiliate and the Employee are partners. This Agreement may only be amended or terminated by the written agreement of the parties hereto.

7. <u>Governing Law</u>: This Agreement shall be governed and construed in accordance with the laws of the State of Illinois.

36. In 1994, Callaghan also executed a Termination Agreement, which was substantively identical to the Termination Agreement executed by Ruff, to terminate his employment and partnership relationships with VMS and its affiliates.

**G. The Creditor Repayment Agreement and Mutual Release.**

37. On or about March 31, 1992, the VMS Partners and the VMS Principal Entities entered into a Creditor Repayment Agreement with their creditors, which, upon information and belief, are the beneficiaries of the Trust. Pursuant to the Creditor Repayment Agreement, the VMS Partners[3] and the VMS Principal Entities[4] assigned all their assets to the Trust, for the benefit of their

---

[3]In the Creditor Repayment Agreement, VMS Partners is defined to include Robert Van Kampen ("Van Kampen"), Peter Morris ("Morris") , Joel Stone ("Stone"), XCC Investment Corporation, Brewster Realty, Inc. ("Brewster"), Van Kampen/Morris/Stone, Inc. ("V/M/S"), Residential Equities, Ltd. ("Residential"), VMS Financial Guarantee Partners ("VMSFGP") and VMS Realty Guarantee Partners ("VMSRGP").

[4]In the Creditor Repayment Agreement, VMS Principal Entities is defined to include VMS Realty Partners ("VMSRP"), Chicago Wheaton Partners ("CWP"), VMS Realty Investment, Ltd. ("VMSRIL"), VMS Realty Investors ("VMSRI"), VMS Financial Services ("VMSFS"), VMS Financial Guarantee Limited Partnership ("VMSFG") and VMS Realty Guarantee Limited Partnership ("VMSRG").

creditors, in exchange for promises of forbearance and releases. The Creditor Repayment Agreement was confidential and hence not attached here.

38.     The participating creditors to the Creditor Repayment Agreement released "each VMS Partner and its Associates . . and [and each of VMS Principal Entities and their respective Associates][5] . . . from all claims [known or unknown] which any of the [Creditors or its Associates] may have, had, presently have or in the future may have . . . [arising] in whole or in part out of . . . any matter or thing whatsoever occurring on or before the date hereof. . . ." A copy of the form of the Mutual Release signed by each of these creditors is attached and incorporated as a part of this complaint as Exhibit "8" (the "Mutual Release").

39.     Under Section 10.04 of the Creditor Repayment Agreement, the VMS Partners and the participating creditors agreed that "no recourse" (including, without limitation, recourse under any deficiency judgment) shall be had against the Non-Recourse Parties" except to the extent recourse is expressly granted under the Creditor Repayment Agreement. Further, under Section 10.04, the VMS Partners and the participating creditors waived the "right to seek or assert (a) any liability against any Non-Recourse Parties or any of their respective assets, (b) a judgment against any Non-Recourse Parties or any of their respective assets, (c) any other legal action against any Non-Recourse Parties or any of their respective assets, and (d) any other right or remedy against any Non-Recourse Parties or any of their respective assets," except for the right to realize upon the

---

[5]There appears to be a typographical error in the Mutual Release, because if one reviews the language of the Mutual Release, the creditors do not specifically provide a release of any and all claims known and unknown to each of the VMS Principal Entities in Section 1.A of the Mutual Release, but each of the VMS Principal Entities provides a release to the participating creditors in Section 1.B of the Mutual Release. Since the parties provided a Mutual Release to each other, the participating creditors must have intended to provide each VMS Principal Entity a release of any and all claims; otherwise, there would be a lack of consideration as to the VMS Principal Entities.

collateral or any other assets of the VMS Principal Entities which did not include VMS I, VMS II or VMS III.

40. The term "Associate" used in the Mutual Release and in the Creditor Repayment Agreement was defined to mean the referenced party's shareholders, general partners, directors, officers, employees, agents and advisors, and shareholders, general partners and family members of any of the foregoing.

41. The term "Affiliate" as used in the Release and in the Creditor Repayment Agreement was defined as follows:

> "Affiliate" of a Person means, with respect to that Person, a Person that directly or indirectly through one or more intermediaries, controls, is controlled by or is under common control with that Person, and shall also mean (a) with respect to a partnership, any general partner of the partnership, any shareholder of a corporate general partner of the partnership and any direct or indirect owner or parent of any such general partner or shareholder, and (b) any partnership in which a Person or Affiliate of a Person is a general partner; provided, however, that if the "Person" to whom reference is being made is a VMS Principal Entity or a VMS Partner, then the term "Affiliate" shall not include Banyan Mortgage Investors L.P., Banyan Mortgage Investors L.P. II or Banyan Mortgage Investors L.P. III. The term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, direct or indirect, or the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

42. The term "Non-Recourse" Parties as used in the Creditor Repayment Agreement is defined as follows:

> 'Non-Recourse' Party shall mean any VMS Partner or any Affiliates or Associates of any of them or any Affiliates or Associates of any VMS Principal Entity (in whatever capacity, including without limitation, as guarantor or a partner or shareholder), or any successors or assigns of any of them. See Section 10.04 of Creditor Repayment Agreement at pp. 93-94.

43. Ruff, Callaghan, Lager and Hochberg were employees of VMS Realty Partners, one of the named "VMS Principal Entities" under the Mutual Release and under the Creditor Repayment Agreement, and therefore, Plaintiffs were "Associates" of a VMS Principal Entity for purposes of the Mutual Release and were "Non-Recourse Parties" for purposes of the Creditor Repayment Agreement.[6]

44. Ruff, Callaghan, Lager and Hochberg were advisors to the "VMS Partners" and the "VMS Principal Entities" as defined under the Mutual Release and under the Creditor Repayment Agreement, and therefore, Plaintiffs were "Associates" of a VMS Partner or a VMS Principal Entity for purposes of the Mutual Release and were "Non-Recourse Parties" for purposes of the Creditor Repayment Agreement.[7]

45. Ruff, Callaghan, Lager and Hochberg were individual partners of VMS III, an Affiliate of VMS Realty Partners and/or of other named VMS Partners or VMS Principal Entities and therefore, Plaintiffs were "Non-Recourse Parties" for purposes of the Creditor Repayment Agreement.[8]

46. Lager was an appointed agent and attorney-in-fact for VMS Financial Guarantee Partners, VMS Realty Guarantee Partners and Van Kampen/Morris/Stone, Inc. VMS Financial Guarantee Partners, VMS Realty Guarantee Partners and Van Kampen/Morris/Stone, Inc. were identified as "VMS Partners" under the Mutual Release, and therefore, Lager was an "Associate" of a "VMS Partner" for purposes of the Mutual Release and was a Nonrecourse Party for purposes

---

[6]See supra ¶¶ 40 and 42.

[7]Id.

[8]See supra ¶¶ 41 and 42.

of the Creditor Repayment Agreement. A copy of the Partnership Resolution of VMS Realty Guarantee Partners is attached as Exhibit "9."[9]

47.     Under its Section 7.09, as collateral for the indebtedness owed by the VMS-related entities, the Creditor Repayment Agreement only expressly granted a lien and security interest on all property and assets owned by each VMS Principal Entity. Since the definition of VMS Principal Entities did not include VMS I, VMS II or VMS III, the Creditor Repayment Agreement did not expressly grant, and thus, under Section 10.04 of the Creditor Repayment Agreement, the participating creditors cannot seek, recourse against the Notes provided by Plaintiffs to VMS III nor against any of Plaintiffs' personal assets.

## H.     The Purported Assignments.

48.     Upon information and belief, in July 1993, Coopers & Lybrand, acting as an accountant on behalf of the VMS creditors/beneficiaries of the Trust, identified a number of assets which it believed had not yet been transferred to the Trust and recommended that these assets be conveyed in various forms. Among the assets referenced by Coopers and Lybrand were the Notes executed by the Plaintiffs and the seven other individual partners in December 1984, allegedly held by VMS I and VMS II. Coopers & Lybrand stated that $360,000 was presently due under the Notes and the Notes were secured by partnership interests which were valueless.

49.     On or about November 17, 1993, VMS I and VMS II agreed to assign the Notes to the Trust, notwithstanding that the Notes had never been assigned to VMS I or VMS II. Upon information and belief, on or about November 17, 1993, Joel A. Stone, acting on behalf of VMS III, (1) purported to assign the Notes and Security Agreements to VMS I and VMS II, and thereafter,

---

[9] See supra ¶ 40.

(2) to assign the Note and Security Agreement on behalf of VMS I and VMS II to the Trust without consideration. Upon information and belief, all the assignments were made "without recourse or warranty. Further, the assignments were invalid, <u>inter alia</u>, because Stone did not have the authority to assign the Notes and there was no consideration for the assignment." Plaintiffs do not possess copies of the assignments of either the Notes or the Security Agreements.

50.     On or about July 11, 2000, the Trust declared a default under the Notes and demanded payment from <u>inter alia</u> each Plaintiff of principal and interest allegedly due under the Notes in excess of $900,000. A copy of the letter from the Trust to George Ruff dated July 11, 2000 is attached and incorporated herein as Exhibit "10."

51.     There is an actual and genuine controversy concerning the respective parties' rights and obligations under the Notes, Security Agreements, Amended and Restated Partnership Agreement, Termination of Employment Agreements, Mutual Release and Creditor Repayment Agreement on which declaratory judgments may be entered pursuant to 28 U.S.C. § 2200 et seq.

### COUNT I
### DECLARATORY JUDGMENT
### AS TO THE NOTES

1-51.     As and for paragraphs 1 through 51 of Count I, Plaintiffs incorporate paragraphs 1 through 51 above.

52.     The Notes executed by Ruff, Callaghan, Lager and Hochberg limited VMS III, as payee, at all times, to partial Recourse to the interest (5%) of each Plaintiff in VMS III, and the rights of each Plaintiff under the Amended and Restated Partnership Agreement. By the express terms of the Notes, Plaintiffs never granted VMS III the right to seek payment from Plaintiffs' assets other than their interests in VMS III and their rights under the Amended and Restated Partnership Agreement.

53.     The Trust's interpretation of Plaintiffs' liability under the Notes contravenes express language of the Note. The preparer of the Notes utilized terms such as "partial Recourse," "at all times," "to assets of the Maker," not to describe a mostly-unsecured personal liability of the Maker after maturity, but to limit liability to certain assets.

54.     The preparer, furthermore, would not have foregone taking a security interest in assets beyond Plaintiffs' partnership interests in VMS III and their rights under the Amended and Restated Partnership Agreement if this was in fact the intent.

55.     Obviously, the Recourse provision of the Notes did not intend to give the payee (VMS III) Recourse to unrelated assets of Plaintiffs "at all times," as this would have converted the Notes into a demand instrument, and thereby directly contravene the stated maturity date.

56.     Plaintiffs' interpretation of the Recourse provision of the Notes is, thus, the sole interpretation which gives consistent and thorough effect to all of the provisions of the Notes, without giving rise to the inconsistencies cited above.

57.     There is no dispute that, beyond the single partial Recourse provision, the Notes were "nonrecourse."

Wherefore, Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg respectfully request a declaratory judgment that the Recourse provision under the Notes were partial and limited to their interests in VMS III and their rights under the Amended and Restated Partnership Agreement, at all times, and that otherwise, the Notes were expressly nonrecourse.

## COUNT II
## DECLARATORY JUDGMENT OF TERMINATION
## OF EMPLOYMENT AGREEMENTS

1-57.    As and for paragraphs 1 through 57 of Count II, Plaintiffs incorporate paragraphs 1 through 57 of Count I.

58.    To the extent, Ruff and Callaghan had personal liability on the Notes, Ruff's and Callaghan's obligation was released by the Termination of Employment Agreement ("Termination Agreement" or "Termination Agreements") that VMS Realty Partners drafted and signed to terminate Ruff's and Callaghan's employment and partnership relationships with VMS and its affiliates.    A copy of the Termination Agreement executed by George Ruff is attached and incorporated herein as Exhibit "7."

59.    Under Section 1 of the Termination Agreement, VMS Realty Partners and its affiliates released Ruff and Callaghan from "any and all claims or demands of any nature whatsoever relating to the Employee's employment with VMS other than unpaid post January 1, 1985 Assignment Note Proceeds."

60.    Section 6 of the Termination Agreement states that the Termination Agreement "contains" the entire agreement of the parties and supercedes all prior understandings and agreements between parties including but not limited to all partnership agreements in which VMS or a VMS affiliate and the Employee are partners."

61.    Therefore,  under Sections 1 and 6, the Termination Agreement superceded the partnership agreement of VMS III, and the Notes provided by Ruff and Callaghan, and it released any and all claims or demands that VMS Realty Partners or its affiliate, VMS III, could assert with respect to the Notes and against any of Plaintiffs' assets.

62.     Since the Termination Agreement is binding on the successors and/or assigns of the parties, by its own language, the Termination Agreement also released any and all claims and demands that the Trust could pursue against Ruff and/or Callaghan.

Wherefore, Plaintiffs George Ruff and Dennis Callaghan respectfully request a declaratory judgment that their personal obligations under the Notes (in whatever form) were released by VMS Realty Partners, VMS-affiliates and by their successors or assigns (including Defendant Partners Liquidating Trust) by way of the Termination of Employment Agreements signed by George Ruff and Dennis Callaghan.

## COUNT III
## DECLARATORY JUDGMENT OF MUTUAL RELEASE

1-62.   As and for paragraphs 1 through 62 of Count III, Plaintiffs incorporate paragraphs 1 through 62 of Count II.

63.     To the extent Ruff, Callaghan, Lager and/or Hochberg had personal liability on the Notes, Plaintiffs' obligation were released by the Mutual Release signed by the creditors/beneficiaries of the Trust on or about March 31, 1992. A copy of the form of the Mutual Release signed by each of these creditors is attached and incorporated as part of the Complaint as Exhibit "8" (the "Mutual Release").

64.     Upon information and belief, the creditors which entered into the Mutual Release, collectively, constituted all or most of the beneficiaries of the Trust, with power to direct the Trust's management.

65.     The Trust was therefore an "Affiliate" of the creditors signing the Release, as that term was defined under the Creditor Repayment Agreement dated March 31, 1992.

66.     Pursuant to the Mutual Release, the creditors, and each of them, on behalf of themselves and their Affiliates, including the Trust, released each of the VMS Partners, VMS Principal Entities and their Associates, "from all claims, known or unknown, which any of the creditors or their Associates *may have, had or presently have or in the future may have arising in whole or in part out of any matter or thing whatsoever occurring on or before the date thereof.*" Further, the Mutual Release specifically states that the creditors and the VMS Releasing Parties specifically waive all damages, expenses and losses in the future which are now not anticipated by them or known by them. <u>See</u> Mutual Release (Ex. "8"), Section 13.

67.     Under its Section 4, the Mutual Release is binding upon all of the Releasing Parties, their successors, assigns or any party claiming through the Releasing Parties. Therefore, the Mutual Release is binding on the Trust.

68.     As stated earlier, Ruff, Callaghan, Lager and/or Hochberg were "Associates" as defined in the Mutual Release for the following reasons:

      a.     All four Plaintiffs were officers and employees of VMS Realty Partners, one of the named "VMS Principal Entities";

      b.     All four Plaintiffs were advisors to the named "VMS Partners" and "VMS Principal Entities"; and/or

      c.     Lager was appointed agent and attorney-in-fact for VMS Financial Guarantee Partners, VMS Realty Guarantee Partners and Van Kampen/Morris/Stone, Inc., all of which are named "VMS Partners."

69.     Plaintiffs' liability under the Notes to the Trust was therefore released by the Mutual Release on or about March 31, 1992.

<u>Complaint and Jury Demand</u>

Page 21

WHEREFORE, Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg respectfully request a declaratory judgment that their personal obligation under the Notes (in whatever form) was released by the creditors/beneficiaries of Partners Liquidating Trust by way of the Mutual Release entered into by said creditors on or about March 31, 1992.

### COUNT IV
### DECLARATORY JUDGMENT OF
### CREDITOR REPAYMENT AGREEMENT

1-69. As and for paragraphs 1 through 69 of Count IV, Plaintiffs incorporate paragraphs 1 through 69 of Count III.

70. As mentioned above, under the Creditor Repayment Agreement, the VMS Partners and VMS Principal Entities assigned all of their property and assets to the Trust for the benefit of the creditors, in exchange for promises of forbearance and releases.

71. More specifically, under Section 10.04 of the Creditor Repayment Agreement, the VMS Partners and the participating creditors agreed that "no recourse" (including, without limitation, recourse under any deficiency judgment) shall be had against the "Non-Recourse Parties" except to the extent recourse is expressly granted under the Creditor Repayment Agreement. Further, under Section 10.04, the VMS Partners and the participating creditors waived the "right to seek or assert (a) any liability against any Non-Recourse Parties or any of their respective assets, (b) a judgment against any Non-Recourse Parties or any of their respective assets, (c) any other legal action against any Non-Recourse Parties or any of their respective assets, and (d) any other right or remedy against any Non-Recourse Parties or any of their respective assets," except for the right to realize upon the collateral or any other assets of the VMS Principal Entities which did not include VMS I, VMS II or VMS III.

72. Ruff, Callaghan, Lager and Hochberg were Non-Recourse Parties as defined in Section 10.04 of the Creditor Repayment Agreement for the following reasons:

a. All four Plaintiffs were officers and employees of VMS Realty Partners, one of the named "VMS Principal Entities";

b. All four Plaintiffs were advisors to the named "VMS Partners" and "VMS Principal Entities";

c. All four Plaintiffs were individual partners of VMS III, an affiliate of VMS Realty Partners or of other named "VMS Partners" or "VMS Principal Entities"; and/or

d. Lager was an appointed agent and attorney-in-fact for VMS Financial Guarantee Partners, VMS Realty Guarantee Partners and Van Kampen/Morris/Stone, Inc., all of which are named "VMS Partners."

73. Since Ruff, Callaghan, Lager and Hochberg are "Non-Recourse" parties under Section 10.04 of the Creditor Repayment Agreement and since Section 7.09 of the Creditor Repayment Agreement only expressly granted as collateral for the indebtedness owed by VMS-related entities a lien and security interest on properly and assets owned by VMS Principal Entities, which did not include VMS I, VMS II or VMS III, the participating creditors, the VMS Partners and their successors and assigns (including the Trust) have waived their rights to seek any liability, judgment, legal action or any other rights or remedies against Plaintiffs and their respective assets by way of the Creditor Repayment Agreement.

WHEREFORE, Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg respectfully request a declaratory judgment that Defendant Partners Liquidating Trust have waived their rights to seek or assert any liability against "Non-Recourse" Parties, including Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg or any of their respective assets by way of the Creditor Repayment Agreement.

## COUNT V
## DECLARATORY JUDGMENT
## AS TO HOLDER OF THE NOTE

1-73. As and for paragraphs 1 through 73 of Count V, Plaintiffs incorporate paragraphs 1 though 73 of Count IV.

74. VMS III did not validly assign the Note to VMS I and VMS II in November 1993 for the following reasons:

    a. Joel Stone, individually (who, upon information and belief, executed assignments of the Note and the Security Agreement), was never a partner of VMS III;

    b. Joel Stone, as a partner of VMS I and VMS II, had no actual or apparent authority to assign VMS III's assets to VMS I and VMS II in November 1993, because such action had to be approved by holders of 51% of the interests of VMS III pursuant to the Amended and Restated Partnership Agreement, and Wrap Loan Corporation (a 50% owner) never approved such action;

    c. Joel Stone, individually or as a partner of VMS I and VMS II, had no apparent authority to assign the Notes on behalf of VMS III to VMS I and

VMS II, because those entities had actual knowledge of the extent of Stone's authority under the Amended and Restated Partnership Agreement.

75. VMS III continues to be the holder of the Notes.

76. Any purported claims of VMS I or VMS II against VMS III to assign the Notes are currently barred by the applicable Statute of Limitations set forth in 735 ILCS 5/13-206.

77. The purported assignment of the Notes by VMS I and VMS II to the Trust passed only that interest which VMS I and VMS II had in the Note, which was none.

Wherefore, Plaintiffs George Ruff, Dennis Callaghan, Scott L. Lager and Mitchell Hochberg respectively request a declaratory judgment that Defendant Partners Liquidating Trust is not the holder of the Notes; that VMS III continues to be the holder of the Notes; and that VMS I and VMS II's claim against VMS III to assign the Notes is currently barred by the applicable Statute of Limitations.

## COUNT VI
## REQUEST FOR ATTORNEYS FEES AND COSTS

1-77. As for paragraphs 1 through 77 of Count VI, Plaintiffs incorporate paragraphs 1 through 77 of Count V.

78. Pursuant to 28 U.S.C. §§ 2202, Plaintiffs seek to recover any additional relief this Court deems necessary or proper in connection with the issuance of the requested declaratory judgment including, but not limited to, the reasonable attorneys fees incurred by Plaintiffs in connection with the prosecution of this action, as well as Plaintiffs' related costs and expenses.

## JURY DEMAND

To the extent that the adjudication of Plaintiffs' claims for declaratory relief involve the resolution of any disputed issues of fact, Plaintiffs hereby request a jury trial on all such issues pursuant to Rules 38, 39 and 57 of the Federal Rules of Civil Procedure.

Dated: November **20**, 2000           Respectfully submitted,

GEORGE RUFF, DENNIS CALLAGHAN,
SCOTT LAGER AND MITCHELL HOCHBERG

By:    *John A. Sopuch*
        John A. Sopuch III
        J. Jeffrey Nouhan
        Bart F. Higgins
        SOPUCH NOUHAN HIGGINS & ARNETT, L.L.P.
        311 South Wacker Drive, Suite 5600
        Chicago, Illinois 60606
        Telephone: (312) 922-0900
        Facsimile: (312) 922-2255

        *Attorneys for Plaintiffs*

SEE CASE FILE FOR EXHIBITS

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

GEORGE RUFF, DENNIS CALLAGHAN,
SCOTT L. LAGER and MITCHELL HOCHBERG

**DEFENDANTS** PARTNERS LIQUIDATING TRU
WILMINGTON TRUST COMPANY,
BANYAN MORTGAGE INVESTMENT FUND,
VMS MORTGAGE COMPANY III, VMS MOR
COMPANY II, and VMS MORTGAGE COMP

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Honolulu, Hawaii
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

00C 7337

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John A. Sopuch III
Sopuch Nouhan Higgins & Arnett, LLP
311 S. Wacker Drive, Suite 5600
Chicago, IL 60606 -- (312) 922-0900

ATTORNEYS (IF KNOWN)
UNKNOWN

JUDGE LEINENWEBER

MAGISTRATE JUDGE LE

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

DOCKETED NOV 21 2000

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR (For Diversity Cases Only) AND ONE BOX FOR DEFENDAN

| | PTF | DEF | | PTF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to Judge fro Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTE |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionme |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commoditi Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matter |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determ Under Equal Access t |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Action |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Action for declaratory judgments pursuant to 28 U.S.C., Sec. 2201. Jurisdiction is premised upon diversity of citizenship of the parties pursuant to 28 U.S.C., Sec. 1332(a).

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $** 0

CHECK YES only if demanded in comp
**JURY DEMAND:** ☒ YES ☐

## VIII. This case

☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 11/20/00

SIGNATURE OF ATTORNEY OF RECORD John L. Sopuch

UNITED STATES DISTRICT COURT