Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7337 | **DATE** | 8/7/2001 |
| **CASE TITLE** | GEORGE RUFF, ET AL. vs. PARTNER'S LIQUIDATING TRUST | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]  Partner Liquidating Trust's motion to strike ¶ 's 11-13 of plaintiffs' 56.1(A) statement of facts and ¶ 3 of Callaghan's, Hochberg's, Lager's, and Ruff's affidavits [78-1] is denied. Plaintiffs' motion for summary judgment on the complaint [41-1] is denied. The Trust's motion for partial summary judgment [43-1] is granted on Count I and Count II to the extent it pertains to Bernini and Seeland. The motion is denied in all other respects. The Trust's motion for summary judgment on the third-party complaint [83-1] is granted with respect to the fraudulent inducement and estoppel defenses. The motion is denied in all other respects. Third-party defendants Neil Hansen's and Leonard Levine's motion for summary judgment on the third-party complaint [79-1] is denied. The parties shall present their joint modified pretrial order on August 23, 2001 at 9:00 a.m.; plaintiffs' draft pretrial order shall be given to the defendant and third party defendants by August 16, 2001. Bench trial is set for September 17, 2001 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■  [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | AUG 0 8 2001 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 104 |
| | Mail AO 450 form. | | 8/7/2001 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| | | | ED-7 FILED FOR DOCKETING 01 AUG -7 PM 5: 39 | | |
| sb | courtroom deputy's initials | | | pg | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE RUFF, ET AL., | ) | |
| | ) | |
| | ) | No. 00 C 7337 |
| Plaintiff, | ) | |
| | ) | Suzanne B. Conlon, Judge |
| v. | ) | |
| | ) | |
| PARTNER'S LIQUIDATING TRUST | ) | |

Defendants.

## MEMORANDUM OPINION AND ORDER

George Ruff, Dennis Callaghan, Scott L. Lager, Mitchell Hochberg, Stephen Berini, Jack A.

Shaffer, and Allen R. Seeland (collectively "plaintiffs") sue Partners Liquidating Trust ("the "Trust")

for declaratory relief as to the nature and extent of their liability under seven promissory notes ("the

notes") allegedly assigned to the Trust (Counts I-V).[1] The Trust counterclaims and sues Neil Hansen

and Leonard Levine (collectively "third-party defendants") for the principal due on the notes,

interest, attorneys fees, and costs. The parties filed cross motions for summary judgment, pursuant

to Fed.R.Civ.P. 56. Plaintiffs move for summary judgment on the complaint. The Trust moves for

partial summary judgment on Counts I, II, and V, plaintiffs' affirmative defenses, and the third-party

complaint.[2] Third-party defendants move for summary judgment on the third-party complaint. The

Trust further moves to strike paragraphs 11-13 of plaintiffs' Local Rule 56.1 Statement of Facts ("Pl.

---

[1] Count VI requests attorneys fees and costs.

[2] The Trust's motion for summary judgment as to its burden of proof is denied. The court discusses the applicable law in this opinion.

-1-

Facts") and paragraph 3 of Callaghan's Hochberg's, Lager's, and Ruff's affidavits, pursuant to Fed.R.Civ.P. 56(e).

## **BACKGROUND**

### I.  **The parties**

All facts are undisputed unless otherwise noted.  The Trust is a Delaware trust domiciled in Delaware.  During all relevant times, VMS was a sponsor of syndicated real estate limited partnerships.  VMS attracted investors by creating tax advantages in real estate investments.  In the mid-1980s, VMS was divided into five principal entities: VMS Realty Partners, Chicago Wheaton Partners, VMS Realty Investment, Ltd., VMS Realty Investors, and VMS Financial Services.

Robert Van Kampen, Peter Morris, and Joel Stone were VMS founders and acted as principals of various VMS entities.  All plaintiffs and third-party defendants except Shaffer were executives and employees of VMS entities.  Shaffer, an outside broker and advisor, was involved in VMS deals.[3]

### II.  **Creation of VMS III**

VMS Mortgage Company I ("VMS I") and VMS Mortgage Company II ("VMS II") were subsidiaries of VMS Realty Partners.  On December 21, 1984, VMS I and II created VMS Mortgage Company III ("VMS III"), pursuant to a partnership agreement.  The creation of VMS III enabled VMS and its principals to preserve certain tax advantages.

---

[3]The parties dispute the nature and extent of plaintiffs' and third-party defendants' responsibilities pertaining to their employment with VMS entities.

VMS principals subsequently sought plaintiffs' and third-party defendants' assistance in developing VMS III. On December 31, 1984, VMS I and II amended the VMS III partnership agreement to include plaintiffs, third-party defendants, and one other individual as partners. The amended partnership agreement names VMS II as managing partner and grants the company power to "execute, acknowledge and deliver any and all instruments necessary to effecuate" any of its powers. The Trust's Local Rule 56.1 Statement of Facts ("Def. Facts"), Ex. C.

The VMS III partners agreed to contribute $20,000 of their personal funds and sign $1,180,000 promissory notes payable to VMS III. In return, they would acquire a 5% interest in the company individually and 50% collectively. The notes provided in part that the "[p]ayee shall have partial recourse at all times to the assets of the Maker, to the maximum extent of ten percent of the outstanding balance of principal and accrued and unpaid interest; otherwise this Note shall be non-recourse." *Id.* at Ex. A1-A9. The notes further provided that "all decisions of the Partners shall be made by consent of Partners owning at least 51% of all of the Interests." *Id.* at Ex. C. The final relevant portion of the note reads:

> This Note may be transferred and pledged without consent of the Maker. In the event this Note is transferred, assigned, or pledged, Maker hereby waives, as against any such transferee, assignee, or pledgee, any defenses and counterclaim of every kind and description that Maker may have against the Payee. Maker hereby waives demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of acceleration, or any other notice.

Pl. Facts Appendix ("Pl. Appdx."), Ex. A.

### III.  Second amendment to partnership agreement

On September 25, 1985, VMS I and II amended the December 1984 partnership agreement and made the new agreement retroactive to the inception of VMS III.  Pursuant to the agreement, VMS III would redeem 50% of VMS I and II in order to admit the individual partners into VMS III.  The agreement further provided that in consideration of redemption, VMS III would distribute the partners' cash contributions and transfer the notes to VMS I and II.  VMS II signed the agreement.  The parties dispute whether plaintiffs and third-party defendants knew about this agreement when they signed the notes.  As VMS III partners, plaintiffs and third-party defendants received K-1 forms allocating profits.  However, they did not receive cash payments.

### IV.  Termination of employment and "hold harmless" agreements

On December 8, 1986, Hochberg entered into a termination of employment agreement with Stone.  The agreement stated, "The following constitutes the current agreement in connection with your employment with VMS Realty Partners and supersedes all other prior agreements or understandings . . ."  Pl. Appdx., Ex. 9(B).

Ruff and Callaghan entered into termination of employment agreements with Morris and Stone in 1987.  The agreements provide  releases from "any and all claims or demands of any nature whatsoever relating to [their] employment with VMS . . ."  *Id.* at Exs. 8 (B) and 11(B).  The termination agreements further stated that they "supersede all prior understandings and agreements between the parties including but not limited to any and all partnership agreements in which VMS or a VMS affiliate and the Employee are partners."  *Id.*

On March 30, 1990, Stone and Morris issued Lager a hold harmless letter.  Section A of the letter read as follows:

VMS and its Affiliated Entities . . . agree and do hereby indemnify and hold you harmless, to the full extent permitted by law, from and against any and all losses, claims, damages, liabilities, judgments, fines, penalties, amounts paid in settlements . . . and expenses . . . incurred by you in connection with any action, claim, suit, or other proceeding . . . against you . . . [including those] brought by one or more of the security holders of VMS or of any of the Affiliated Entities or Funds . . . in any way relating to, your serving as a director, officer, or in a similar capacity of VMS or of any of the Affiliated Entities or Funds . . .

*Id.* at Ex. 32(E).

The parties dispute whether Stone gave Bernini a release in his severance agreement. Plaintiffs cannot find a copy of the agreement. The parties further dispute whether Stone and Van Kampen orally released Seeland from note indebtedness when his employment with VMS terminated.

## V.    Wrap Loan Corporation

On July 31, 1987, VMS III partners consented in writing to assignment of their individual partnership interests to Wrap Loan Corporation ("Wrap Loan"). As a result, Wrap Loan became a 50% partner in VMS III. Each former VMS III partner received stock certificates granting them five shares of Wrap Loan. The confidential offering memorandum stated in part:

The Directors of Wrap Loan Corporation are . . . hereby soliciting subscriptions for 50 shares . . . from the ten individuals listed in Appendix A hereto ("the Partners"), each of whom is a general partner of VMS Mortgage Company III, an Illinois general partnership . . . Each Note of a subscribing Partner will be fully non-recourse to the Company (which will not assume any personal liability thereon), while each subscribing Partner will continue to remain personally liable for a maximum of 10 percent of the outstanding balance of principal and accrued and unpaid interest thereon.

The Trust's Local Rule 56. 1 Statement of Additional Facts ("Def. Add. Facts"), ¶ 100; The

Trust's Response to Plaintiffs' 56.1 Facts ("Def. Fact Resp."), Ex. 2. The subscription agreement

signed by the partners provides that "[s]ubscriber has received, reviewed, and understands the

Memorandum and all of the Exhibits thereto . . ." Def. Fact Resp., Ex. 1A-1G.

## VI.  Termination of the VMS III partnership

VMS I, VMS II, and Wrap Loan executed an agreement terminating the VMS III

partnership "as of December 31, 1984." The agreement provides that "all assets, if any, of the

Partnership have been distributed." Def. Fact Resp., ¶¶ 56-57; Ex. 6.

## VII.  Creditor Repayment Agreement

In 1990, VMS met with creditors in an effort to avoid bankruptcy. On March 31, 1992,

VMS partners and VMS principal entities[4] entered into the "Creditor Repayment Agreement"

("CRA") with their creditors in exchange for mutual releases.[5]  The following parties are

released:

> Each of the VMS Partners and their respective Associates . . . from
> any and all claims whatsoever which any of the VMS Releasing
> Partners may have had, presently have or in the future may have
> against the Creditor Released Parties which arise, have arisen or

---

[4]The CRA defines "VMS partners" as Van Kampen, Morris Stone, XCC Investment
Corp., Brewster Realty, Inc., Van Kampen/Morris/Stone, Inc., Residential Equities, Ltd., VMS
Financial Guarantee Partners, and VMS Realty Guarantee Partners. "VMS principal entities" are
VMS Realty Partners, Chicago Wheaton Partners, VMS Realty Investments, Ltd., VMS Realty
Investors, VMS Financial Services, VMS Financial Guarantee Limited Partnership, and VMS
Realty Guarantee Limited Partnership.

[5]The CRA created three tiers for over 400 VMS entities. Tier I consisted of named VMS
partners plus four additional corporations and two additional partnerships. Tier 2 was made up
of VMS principal entities. Tier 3, entitled "VMS entities," included VMS partners and principal
entities, VMS Mortgage Companies I, II, and III, and VMS Realty, Inc. Tier 3 representatives
did not sign the CRA or the mutual releases.

may hereinafter arise in whole or in part out of or on account of such Creditor's Existing Indebtedness, whether known or unknown and if unknown, whether or not the unknown matter would have been material to . . . the decision to enter into this Release or the Creditor Repayment Agreement.

Second Amended Complaint ("Am. Cmplt."), Ex. 8. Undefined terms in the mutual releases have the meaning ascribed to CRA terms. The CRA defines "associates" as directors, officers, employees, agents and advisors.

The CRA includes non-recourse provisions. Specifically, the agreement provides:

"[N]o recourse (including, without limitation, recourse under any deficiency judgment) shall be had against the Non-Recourse Parties . . . or any of their respective assets," and "each VMS Partner, with respect to Partner Indebtedness only, hereby waives the right to seek or assert (A) any respective assets, (B) a judgment against any Non-Recourse Parties or any of their respective assets, (C) any other legal action against any Non-Recourse Parties or any of their respective assets, except for the right to realize upon . . . assets of the VMS Principal Entities . . . .

Pl. Appdx. at p. 93. "Non-recourse parties" are defined as "any VMS Partner or any affiliates or associates of any VMS partner or principal entity." *Id.* at p. 94.

In November 1993, the Fifth Amendment to the CRA was executed. The amendment created the Trust for the benefit of creditors. The amendment purported to transfer VMS III assets, including the notes, to the Trust. Stone signed the amendment and was listed as one of the VMS creditors receiving rights under the agreement. Levine served as settlor for the Trust and represented the entities that served as trustee. The notes and other assets were transferred to the Trust in bulk.

## VIII. Plaintiffs' declaratory judgment motion

Plaintiffs seek declaratory judgments that: (1) the recourse provision under the notes was limited to plaintiffs' interests in VMS III and their rights under the partnership agreement (Count I); (2) the note obligations of Ruff, Callaghan, and Berini were released by termination of employment agreements and the note obligations of Seeland were released by an oral agreement with Van Kampen and Stone (Count II); (3) plaintiffs' note obligations were released by the CRA's mutual releases (Count III); (4) the Trust waived its rights to assert liability against the CRA's non-recourse parties (Count IV); and (5) the Trust is the holder of the notes (Count V).[6]

## DISCUSSION

## I. Motion to strike

Summary judgment affidavits must set forth admissible facts and be based on personal knowledge. Fed.R.Civ.P. 56(e). Paragraph 3 of Callaghan's affidavit asserts he was "an officer with or advisor to, or . . . provided employment services to, various VMS entities." Plaintiffs' Appdx., Ex. 8 at ¶ 3. Hochberg's, Lager's, and Ruff's affidavits make similar statements. *Id.*, Exs. 9-11 and 32 at ¶ 3. The Trust asserts these statements should be stricken as vague and conclusory allegations in a case "where the exact name and position of the employee in a certain Company are critical . . ." Def. Fact Resp., ¶ 11.

It is true that conclusory allegations are insufficient support for a summary judgment motion. *Korotko-Hatch v. John G. Shedd Aquarium*, 65 F.Supp.2d 789, 801 (N.D. Ill. 1999). However, a motion to strike is disfavored and will only be granted "if the complained of

---

[6]Count V further seeks a judgment that the statute of limitations bars VMS I's and II's claim against VMS III pertaining to assignment of the notes. Plaintiffs did not address this request in their summary judgment motion.

materials are essentially unsupported by the record." *Architectural Iron Workers Local No. 63 Welfare Fund et al. v. United Contractors, Inc.,* 46 F.Supp.2d 769, 770 (N.D. Ill. 1999). The Trust fails to cite supporting authority for striking disputed evidence on vagueness or conclusory grounds. Although affiants' statements are vague, they are technically supported by the record. *See* Pl. Facts, ¶¶ 11-13. The Trust does not dispute that affiants were advisors or officers of VMS Realty Partners and VMS Realty Inc. Def. Fact Resp., ¶ 11.

The consequence of submitting vague and conclusory testimony is that the evidence will be insufficient for prevailing on a summary judgment motion. The question of whether plaintiffs offer sufficient support to establish affiants were officers, advisors, or employees of specific VMS entities must be resolved after consideration of the entire record. Accordingly, the Trust's motion to strike portions of plaintiffs' affidavits and corresponding statement of facts is denied.

## II.     Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *King v. National Human Resource Committee, Inc.,* 218 F.3d 719, 723 (7th Cir. 2000); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986);   Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Applicable law

The Trust asserts the right to enforce the notes as a holder in due course.  A holder in due course takes the instrument: (1) for value; (2) in good faith; and (3) without notice the instrument is overdue, dishonored, or subject to any defense or claim.  Uniform Commercial Code ("UCC") § 3-302; *Northwestern National Insurance Company of Milwaukee, Wisconsin v. Lutz*, 71 F.3d 671, 674-75 (7th Cir. 1996).  "A holder in due course takes the instrument free of all defenses and claims except the so-called 'real' defenses" listed in UCC, § 3-305.  *Bank of North Carolina v. Rock Island Bank*, 630 F.2d 1243, 1248 (7th Cir. 1980).  However, any defenses the maker has against the holder rather than the notes themselves may still be asserted.  810 ILCS 5/3-305(b).

It is undisputed plaintiffs signed the notes and the Trust currently holds them.  Under these circumstances, the Trust is entitled to recover unless plaintiffs establish a defense.  UCC § 3-308; *Bank of North Carolina*, 630 F.2d at 1247.[7]  Plaintiffs must establish a defense by a preponderance of the evidence.  *Bank of North Carolina*, 630 F.2d at 1247.  The burden shifts to the Trust to establish holder in due course status once plaintiffs establish a defense.  *Id.*

### A.  Plaintiffs' motion for summary judgment

Plaintiffs move for summary judgment because that they were discharged from their note obligations.  "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such

---

[7]In *Bank of North Carolina,* the court refers to UCC § 3-307.  UCC § 3-308 was formerly UCC § 3-307.

as surrender of the instrument to the party, destruction . . . cancellation . . . or the addition of words to the instrument . . . or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing." 810 ILCS §5/3-604 (2001). *See also Holman v. Simborg,* 504 N.E. 2d 967, 969 (Ill. App. Ct. 1987) ("a release is a relinquishment of a right which may be given gratuitously or for inadequate consideration . . .").

### 1. Execution of the notes

Plaintiffs contend their note obligations were discharged by VMS upon execution of the notes. They offer evidence to show Morris, Stone, and Levine told plaintiffs they would not be personally liable on the notes. Pl. Facts at ¶ 21. However, the notes unambiguously state that the payee will have partial recourse to plaintiffs' assets. Parol evidence of a prior or contemporaneous agreement may not be used to alter the meaning of an unambiguous contract. *Grun v. Pneumo Abex Corporation,* 163 F.3d 411, 420 (7th Cir. 1999). Plaintiffs' motion for summary judgment on Count I must be denied.[8]

### 2. Severance and "hold harmless" agreements

Plaintiffs contend their obligations were released by various severance and "hold harmless" agreements. They offer evidence to show Ruff and Callaghan entered into agreements with Stone that discharged them from "any and all claims or demands of any nature whatsoever relating to their employment with VMS . . . ." Pl. Facts at ¶ 30. The agreements "supersede all prior understandings and agreements between the parties including but not limited to any and all partnership agreements in which VMS or a VMS affiliate and the employees are partners . . ." *Id.* at ¶ 31. Plaintiffs present evidence Hochberg entered into a termination agreement with VMS

---

[8]The Trust's Statute of Frauds and 810 ILCS § 5/3-604 arguments are moot.

Realty Partners that "supersedes all other prior agreements and understandings, whether oral or in writing." *Id.* at ¶ 28. Additionally, plaintiffs offer evidence to show Lager's note obligations were released by an agreement to hold him harmless for claims related to his services for VMS or any of the "affiliated entities or funds."[9] Plaintiffs' 56.1 Additional Facts ("Pl. Add. Facts"), ¶ 141.

The Trust asserts the actual language of the agreements shows plaintiffs were only released from their obligations in connection with VMS Realty Partners and not VMS III. When a summary judgment motion depends on contract interpretation, the court must determine "(1) if the contract is ambiguous or unambiguous and (2) if it is ambiguous, whether after consideration of the extrinsic evidence, there are any triable issues of fact." *Hickey v. A.E. Staley Manufacturing,* 995 F.2d 1385, 1389 (7th Cir. 1993).

It is undisputed Hochberg's agreement only released all prior agreements "in connection with [his] employment with VMS Realty Partners." Similarly, VMS Realty Partners is the only VMS entity to sign Callaghan's and Ruff's agreements. However, it is also undisputed VMS III was a subsidiary of VMS Realty Partners. Plaintiffs argue the releases are general and cover VMS Realty Partners subsidiaries.

The court finds the agreements are ambiguous on their face. They do not identify VMS I, II, or III as parties to the agreement. Furthermore, the agreements do not state that releasing obligations incurred while working for the principal company operates to release obligations incurred in connection with subsidiaries. *See Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d

---

[9]Plaintiffs make this argument in their response to the Trust's motion for summary judgment. For purposes of clarity, the court will address the argument in this section of the decision.

449, 456-57 (7th Cir. 1991) (contract is ambiguous when it does not provide that naming subsidiaries releases the parent). "A party releases only those other parties whom he intends to release." *Id.* at 457. Neither party presents evidence of the parties' intent in signing the releases.

The court finds additional ambiguities in the agreements. First, Lager's, Ruff's and Callaghan's agreements refer to VMS and its affiliates. It is unclear from the face of the agreement which entities constitute VMS and VMS affiliates. Second, Lager's release is limited to claims arising from his service as a director or officer or a person acting in "a similar capacity" to a director or officer. It is unclear whether Lager's VMS work responsibilities qualify him as a person acting in "a similar capacity" to an officer or director. Finally, Ruff's and Callaghan's releases are limited to the "employee's employment with VMS." It is unclear whether VMS III note investments fall within the scope of employment.

The parties present conflicting evidence to clarify these ambiguities. Plaintiffs offer evidence to show they acted in the scope of their VMS Realty Partners employment when they signed the notes and made investments in VMS III. Pl. Facts. at ¶¶ 16, 22. However, as discussed above, there are issues of material fact as to whether employment with VMS Realty Partners is covered by the agreements.

The Trust offers evidence the termination agreements did not cover VMS III. Specifically, plaintiffs signed a "Warranty Assignment of Partnership Interest and Agreement to Make Payments" after the termination agreements were executed. Def. Add. Fact at ¶ 88. The Trust asserts this evidence shows plaintiffs retained their VMS III partnership status after the agreements were signed. However, plaintiffs offer evidence that at the time they signed this warranty assignment they no longer possessed partnership interests. They merely signed this

document to eliminate "phantom income" from their individual income tax returns. Pl. Resp. to Def. Add. Facts at ¶ 88. The conflicting evidence regarding the coverage of Ruff's, Callaghan's, Lager's, and Hochberg's termination agreements is a disputed issue of material fact.

Plaintiffs offer further evidence that Stone released Berini from his note obligations by way of a termination agreement. Berini's termination agreement cannot be found. Therefore, plaintiffs rely solely on Berini's testimony. Pl. Facts, ¶ 34. Self-serving statements are insufficient for purposes of summary judgment. *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681-82 (7th Cir. 1999). In addition, Stone's testimony contradicts Berini's contention that a termination agreement released his note obligations. Def. Resp. to Pl. Facts, ¶ 34.

Plaintiffs present evidence Stone orally released Seeland from his note obligations when his employment with VMS terminated. Pl. Facts at ¶¶ 26-27. The Trust contends this evidence is barred by the parol evidence rule. The Trust misapplies the rule. The rule provides evidence of a contemporaneous or prior oral agreement may not be used to vary or contradict an unambiguous written contract. *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.,* 212 F.3d 373, 380 (7th Cir. 2000). Subsequent oral modifications to written agreements are permissible. *R.T. Hepworth Company v. Dependable Insurance Company, Inc.,* 997 F.2d 315, 317 (7th Cir. 1993).

The Trust contends evidence regarding Seeland's agreement is barred by the statute of frauds. Agreements that cannot be performed within one year are barred by the statute of frauds unless they are in writing. A promise to release a debt cannot be performed within a year. *See, e.g., United Municipal Leasing Corporation v. Lexington Corporate Properties, Inc.,* No. 95 C 3212, 1996 WL 672253, at *8 (N.D. Ill. November 18, 1996) (internal citations omitted).

Therefore, Stone's release must be in writing to be admissible. Plaintiffs' motion for summary judgment on Count II must be denied.

### 3. CRA non-recourse and mutual release provisions

Plaintiffs contend they were released by the CRA's non-recourse and mutual release provisions. The mutual release provisions apply to VMS partners and their associates. The non-recourse provisions apply to VMS partners and associates and affiliates of a VMS partner or principal entity. Plaintiffs offer evidence to show they qualify as associates of VMS partners. Pl. Facts at ¶¶ 12-13. The Trust challenges the evidence on vagueness grounds. As discussed above, vague and conclusory allegations are insufficient support for a summary judgment motion. *Korotko-Hatch v. John G. Shedd Aquarium*, 65 F.Supp.2d 789, 801 (N.D. Ill. 1999). In an effort to show they were associates, plaintiffs merely provide conclusory allegations they were either "an officer of or advisor to, and/or provided employment services for" VMS partners. Pl. Facts at ¶¶ 12-13. There are no statements detailing the actual services plaintiffs provided and to whom they were provided. *See* Local Rule 56.1(a)(3) (summary judgment motions must include statement of facts showing the moving party is entitled to judgment as a matter of law). It is not the court's responsibility to search the record for facts supporting these conclusory allegations. Accordingly, plaintiffs' motion for summary judgment on Counts III-V is denied.[10]

---

[10]Summary judgment on Count V is denied because the Trust's status as holder in due course cannot be challenged until plaintiffs have established a defense by a preponderance of the evidence.

**B. The Trust's motion for partial summary judgment on the complaint**

The Trust asserts plaintiffs' defenses in Count I and II fail as a matter of law. For the reasons discussed in Section A, the Trust's motion for summary judgment is granted on Count I. The motion is granted on Count II only as it pertains to Bernini and Seeland.

The Trust asserts it can prove its status as a holder in due course and, thus, summary judgment must be granted in its favor on Count V and plaintiffs' affirmative defenses that are not directly related to the Trust.[11]

**1. Validity of transfer**

Plaintiffs contend VMS II, while acting as VMS III's managing partner, invalidly transferred the notes from VMS III to VMS I and II. They offer evidence to show the partnership agreement precluded this action without approval of 51% of the partners. Pl. Fact Resp. at ¶ 29. The Trust offers evidence to show the managing partner had the power to "administer" the notes and to take actions to "enforce its rights as the holder of the notes." *Id.* The partnership agreement is ambiguous in regard to whether the managing partner was granted the power to transfer the notes.

The Trust offers undisputed evidence to show plaintiffs believed the managing partner had the power to transfer the notes. Specifically, Lager signed a document on behalf of Wrap Loan Corporation stating that all VMS III assets had been distributed. *Id.* at ¶¶ 56-57. Plaintiffs do not challenge Lager's authority to bind the rest of them. In addition, they do not dispute the

---

[11]In the reply brief, the Trust requests summary judgment in its favor on all defenses. The Trust may not change its summary judgment requests at this stage. *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 668 (7th Cir. 1998) (new arguments raised in a reply brief are waived). The court will limit its analysis to the Trust's original requests.

Trust's description of their notes as VMS III assets. Based on this evidence, no reasonable jury could find that the transfer of the notes from VMS III was invalid.[12]

## 2. The Trust's status as a holder in due course

Plaintiffs contend that even if the transfer were valid, VMS III did not take the notes as a holder in due course. Therefore, subsequent transferees are not holders in due course. *See* 810 ILCS 5/3-203(b) (transferee has the same rights as its predecessor in interest, including any right as a holder in due course). Plaintiffs' argument is based on a misunderstanding of the holder in due course rule. As the initial payee, VMS III cannot acquire holder in due course status. *See e.g., Resolution Trust Corporation v. Juergens,* 965 F.2d 149, 152 (7th Cir. 1992) (different rules govern defenses for original payee and subsequent holders).

Plaintiffs contend VMS I and II were not holders in due course and, thus, neither is the Trust. To establish that VMS I and II did not have notice of defenses, the Trust relies on the undisputed fact that the notes contained defense waiver clauses. However, the Trust fails to offer any case law supporting the proposition that a waiver clause precludes a defense based on release from the waiver clause.[13] Thus, the Trust's status as a holder in due course cannot be resolved by summary judgment unless plaintiffs cannot prove any defense. As discussed above, there are genuine issues of material fact as to whether some plaintiffs were released by termination and "hold harmless" agreements. Furthermore, the Trust has not moved for summary judgment as to

---

[12]The Trust's estoppel arguments are addressed in Section C below.

[13]Plaintiffs' argument regarding 810 ILCS 5/3-302(c)(ii) is moot.

whether plaintiffs were released by the CRA's fifth amendment.[14] Accordingly, the Trust's

motion for summary judgment on its status as a holder in due course must be denied.

## C. Third-party defendant's motion for summary judgment

Third-party defendants move for summary judgment on the third-party complaint. They

offer evidence to support three defenses and to show the Trust is not a holder in due course. The

court need not address arguments regarding the Trust's status as a holder in due course because

they fail to establish any defenses as a matter of law.

### 1. The CRA

Third-party defendants assert their note obligations were released by the CRA's mutual

releases and non-recourse provisions. As discussed above, the release provisions apply to VMS

partners and their associates. The non-recourse parties include VMS partners, their associates,

and affiliates of a VMS partner or principal entity.

#### a. The mutual releases

Third-party defendants assert they were associates of VMS partners. They offer evidence

to show they acted as agents and advisors for Van Kampen, Morris, and Stone. Third-party

defendants' 56.1 Statement of Facts ("Third-party Facts") at ¶¶ 10-13, 15-16, 19-22. Hansen

advised Van Kampen as to whether VMS transactions would pose a risk to Van Kampen

personally. *Id.* at ¶ 20. Hansen regularly advised Van Kampen, Stone, and Morris on whether

and how each VSM non-hotel acquisition would benefit them personally. Levine advised Stone

on VMS' tax problems and recommended the creation of VMS III. *Id.* at ¶¶ 27-34. In addition,

Levine was an agent of five other VMS partners. *Id.* at ¶ 17.

---

[14]Plaintiffs' arguments regarding fraudulent inducement are addressed in Section C.

-18-

The Trust offers evidence to counter third-party defendants' claims regarding their employment status. First, the Trust offers evidence that third-party defendants merely gave advice to VMS principal entities through individual partners. The Trust's 56.1 Statement of Facts Opposing Third-party Defs.' Motion For Summary Judgment ("Trust Fact Resp.") at ¶ 10. Second, the Trust contends the advisors referenced in the CRA included lawyers and accountants involved in the CRA's negotiating and structuring. This fact will not be considered by the court. The Trust does not provide a supporting citation to the record. *See* Local Rule 56.1(b)(3)(B). The Trust also points to undisputed evidence that third-party defendants were not specifically named in the release. The Trust cites *Stro-Wold Farms v. Finnell,* 569 N.E. 1156 (Ill. App. Ct. 1991) for the proposition that a party may not be released unless specifically named. However, this case addressed releases in the context of a settlement agreement and, thus, is not applicable.

The Trust further contends that even if the Fifth Amendment's transfer of note obligations conflicts with the release provisions of the original CRA, the amendment is controlling. The Trust cites *Boatmen's National Bank of St. Louis v. Smith,* 835 F.2d 1200, 1203 (7th Cir. 1996) and *Robinson v. United States,* 408 F.Supp. 132, 136-37 (N.D. Ill. 1976) for the proposition that specific provisions in a document control over general provisions. These cases are not applicable. They address general and specific provisions in the same document rather than two documents executed at different times. Based on the evidence presented, there are genuine issues of material fact as to whether third-party defendants' note obligations were released.

### b. Non-recourse provisions

The CRA provides that no recourse will be taken against any non-recourse party "except for the right to realize upon . . . assets of the VMS principal entities." *Id.* at ¶ 53. Third-party defendants offer evidence to show they qualify as non-recourse parties because they were associates of a VMS principal entity, namely VMS Realty Partners. *Id.* at ¶¶ 14, 53-56.

The Trust does not dispute third-party defendants were associates of a VMS principal entity. Instead, the Trust asserts the non-recourse principal entity exception is applicable because the notes were assets of VMS Realty Partners. Specifically, the Trust asserts that because VMS I and II held the notes and were owned by VMS Realty Partners, the assets were owned by VMS Realty Partners. The Trust offers the VMS partnership agreement to show that VMS I and II were owned by VMS Realty Partners. The Trust's Additional 56.1 Third-party Facts ("Trust Add. Facts") at ¶¶ 118-120. Third-party defendants dispute this evidence on the grounds that the agreement detailed ownership in 1987, not 1993 when the Fifth Amendment was signed. Furthermore, third-party defendants offer evidence to show the notes were held by VMS III, not a VMS principal entity. *Id.* at ¶¶ 54-55.

The Trust offers further evidence that the Fifth Amendment recognized Levine as one of the note makers and provided that these notes would be transferred to the Trust. Pl. Appdx., Ex. 22 at 002103. The Trust asserts the fact that Levine signed the Fifth Amendment shows his understanding the notes were still actionable. However, this evidence does not conclusively establish that Levine agreed to waive the binding effect of the mutual releases and non-recourse provisions. The Fifth Amendment does not specifically waive the releases and non-recourse provisions. There are genuine issues of material fact pertaining to whether third-party

defendants' note liability is waived by the CRA. Accordingly, third-party defendants are not entitled to summary judgment based on this defense.

### 2. Fraudulent inducement

Both plaintiffs and third-party defendants assert a defense based on fraudulent inducement. Fraudulent inducement may invalidate a contract. *Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1207 (7th Cir. 1998). To establish fraudulent inducement, plaintiffs must show: (1) they were victims of an intentional false representation of a material fact; (2) the representation was made for the purpose of inducing plaintiffs to act; and (3) they reasonably relied upon the statements to their detriment. *Id.*

Plaintiffs and third-party defendants offer evidence they would not have signed the notes but for Stone's and Morris' representations that their liability under the notes would be limited to their initial $20,000 investment. Third-party Facts at ¶¶ 33-34, 36-37, 39-41; Pl. Add. Facts at ¶¶ 69, 71. "A party who could have discovered the fraud by reading the contract, and in fact had an opportunity to do so, cannot later be heard to complain that the contractual terms bind her." *Id.* The clear language of the notes provides that plaintiffs and third-party defendants would be subject to liability up to ten percent of the principal and unpaid interest. Plaintiffs' and third-party defendants' reliance on promises of no personal liability cannot be considered reasonable. *Id.* Their citations to *Dellcar & Co. v. Hicks,* 685 F.Supp. 679, 682 (N.D. Ill. 1988) and similar cases do not warrant a different result. These cases address the parol evidence rule rather than reasonable reliance.

### 3. Estoppel

Plaintiffs and third-party defendants assert a defense of estoppel on the same grounds they assert a fraudulent inducement defense. Reasonable reliance is an element of an estoppel defense. *Federal Deposit Insurance Corporation v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997). Accordingly, for the reasons discussed under the fraudulent inducement section, this defense is insufficient for purposes of avoiding note liability.

### D. The Trust's motion for summary judgment on the third-party complaint

The Trust moves for summary judgment on third-party defendants' affirmative defenses. For the reasons discussed above, the motion is granted with respect to the estoppel and fraudulent inducement defenses and denied as it pertains to the release defenses.

In regard to the settlement agreement and unclean hands defenses, the Trust merely rests on its alleged status as a holder in due course. As discussed in Section B, there are genuine issues of material fact as to whether the Trust can establish its status as a holder in due course. Accordingly, its motion for summary judgment on these defenses must be denied.

The only remaining defense asserted by third-party defendants is invalid transfer of the notes. *See* Trust Facts at ¶¶ 28-32. For the reasons discussed in Section B(1), the partnership agreement is ambiguous. To establish that third-party defendants recognized VMS III's authority to transfer the notes, the Trust offers evidence they confirmed in 1994 that VMS III had transferred the notes. Specifically, Lager signed a document on behalf of Wrap Loan corporation stating that all VMS III assets had been distributed. Third-party Facts at ¶¶ 58-60. Counter-defendants offer evidence that Lager, Levine, and Hansen did not consider the notes to be assets.

Third-party Defs. Response to the Trust's 56.1 Facts ("Third-party Resp. Facts"), ¶¶ 60-61. The notes were merely part of a plan to obtain tax benefits for VMS. *Id.* at ¶¶ 58-59, 81-92.

The Trust offers further evidence to establish third-party defendants are estopped from asserting invalidity because they knew about the transfer, but did not object. Specifically, they point to documents showing the notes were transferred. *Id.* at ¶¶ 33-35, 39-44, 46-47, 49-51. In response, third-party defendants present evidence they did not actually receive copies of these documents. Third-party Resp. Facts, ¶¶ 33, 37, 41-47, 49-51. The Trust further asserts that even if they did not receive a copy of these documents, third-party defendants had a duty as VMS III partners to review financial statements to discover this information. Third-party defendants counter with evidence that the purported transfer did not actually occur until November 17, 1993 and that they objected to the transfer soon after this date. Third-party Facts at ¶¶ 33, 123-24, 128-29. Third-party defendants present sufficient evidence to withstand summary judgment on the invalidity defense.

## CONCLUSION

The Trust's motion to strike paragraphs 11-13 of plaintiffs' 56.1(A) statement of facts and paragraph 3 of Callaghan's Hochberg's, Lager's, and Ruff's affidavits is denied. Plaintiffs' motion for summary judgment on the complaint is denied. The Trust's motion for partial summary judgment is granted on Count I and Count II of the complaint to the extent it pertains to Bernini and Seeland. The motion is denied in all other respect as to the complaint. The Trust's motion for summary judgment on the third-party complaint is granted with respect to the fraudulent inducement and estoppel defenses. The motion is denied in all other respects. Third-party defendants' motion for summary judgment on the third-party complaint is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

August 7, 2001